## Case No. 11,147.

### PIERCE et al. v. STRICKLAND.

[2 Story, 292.][1]

Circuit Court, D. Maine.    May Term, 1842.

SHERIFF'S RETURN—MISTAKE—AMENDMENT—VALUATION OF GOODS—BURDEN OF PROOF—SUIT FOR OFFICIAL MISFEASANCE.

1. Where an under-sheriff attached certain goods without a schedule, and made return thereof as of the value of $7,000, and obtained a receipt therefor with the consent of the plaintiff's attorney, and afterwards, by leave of the state court, amended his return by reducing the sum to $2,200, the actual value of the goods; it was *held*, that it was within the discretion of the court to allow such an amendment, it being a case of pure mistake; and that the decision by the state court was not revisable by the circuit court.

[Cited in Baker v. Davis, 22 N. H. 35; Bryant v. Osgood, 52 N. H. 187.]

2. *Held*, also, that in cases of special attachment, the plaintiff's attorney has an implied authority to do all acts, which the interests of his clients may require, and that, in the present case, his assent to the appointment of a receiptor was conclusive.

[Cited in Clark v. Randall, 9 Wis. 138; Moulton v. Bowker, 115 Mass. 40.]

3. Where an officer, with the creditor's consent, makes a valuation of goods, without taking an inventory, such valuation is to be considered, prima facie, as fair and just, and the burthen of proof is on the officer to establish the contrary; but it does not operate as an estoppel.

4. Where an officer is sued for any official misfeasance, the plaintiff can recover only his actual loss, arising therefrom.

5. The consent of the creditor to the bailment to a receiptor of goods attached, only exempts the attaching officer for losses not occasioned by his neglect or misfeasance.

6. In this case, the original declaration was upon a refusal to deliver up, upon an execution, goods valued at $7,000, and upon leave to amend, granted by the court, a new count was introduced, claiming them at $2,200; and it was *held*, that although it was within the discretion of the court to allow the new count, yet since the line of defence was thereby materially changed, it ought only be granted upon payment of the defendant's costs up to the time when the offer to file such count was made.

Case by the plaintiffs [Peter H. Pierce and others] against the defendant [Hastings Strickland], a deputy sheriff of the county of Penobscot, Maine, for an official neglect and misfeasance in not satisfying an execution in favor of the plaintiffs against one Dwight Allen, out of certain goods, which had been attached upon the mesne process in the same suit. The original declaration contained va-

rious counts. The first was for not safely keeping the goods. The second for falsely and fraudulently altering the return upon the original writ as to the value of the goods. The third was for falsely and fraudulently altering a receipt given for the goods. The case came before the court upon the following facts: The plaintiffs, by their attorney, Enoch Brown, instituted a suit against Dwight Allen; the writ was delivered to the defendant, a deputy sheriff, for service, and he made return thereon of an attachment of "sundry goods, wares, and merchandize, as the property of the said Allen, being all the goods in the store, of the value of $7,000." No inventory was taken, but a valued receipt was given, corresponding to the return, which was approved by the plaintiff's attorney. The defendant, while the action was pending, and after he had ceased to be an officer, altered the return and the receipt, by changing the estimated value therein from $7,000 to $2,200, the latter sum being the actual value of the goods. This amendment was made by him under leave to amend, granted to him by the state court, the plaintiff's attorney consenting to such an alteration, as should reduce the valuation to the actual worth of the goods attached. Judgment was recovered in the suit, and execution issued for $7,000, but the defendant refused to deliver goods of such a value.

Rogers & Greenleaf, for plaintiffs.

The argument for the plaintiffs was, in substance, as follows:

1. The defendant having affixed, in his original return, and in his original receipt, a certain valuation of the personal property attached by him, is concluded thereby. If he would have avoided such a liability, he should have taken an inventory of the goods, and then parol evidence would have been admissible to show their value. But not having done so, there is nothing whereby to correct the return; and as no other rule or measure of ascertaining the damages was agreed upon, than the return, the value stated therein is to be taken as the liquidated amount of damages, which the debtor, the sheriff, the receiptor, and the plaintiff, are estopped from disputing. Where a sum is named, and the damages are incapable of ascertainment by any satisfactory or known rule, it is considered as liquidated damages, and concludes all parties. Fletcher v. Dyche, 2 Term R. 32; Lowe v. Peers, 4 Burrows, 2225; Pierce v. Fuller, 8 Mass. 223; Nobles v. Bates, 7 Cow. 307; Smith v. Smith, 4 Wend. 468; Jones v. Green, 3 Younge & J. 298; Woodward v. Gyles, 2 Vern. 119; Brooks v. Hubbard, 3 Conn. 58. The reason, why an estimated value is thus conclusively taken, is stated in Story, Bailm. 254. That the receiptor is conclusively bound by the value expressed in the receipt, if no inventory is taken, was settled in Jewett v. Torrey, 11 Mass. 219. See, also, Drown v. Smith, 3 N.

[1][Reported by William W. Story, Esq.]

H. 299. So, also, where a sheriff returns, that his bailiff had seized goods on a fieri facias, to the value of £160, which were rescued; it was held, on scire facias, against him, that he was liable for the amount returned. Mildmay v. Smith, 2 Saund. 343; Clerk v. Withers, 2 Ld. Raym. 1072, 1 Salk. 322; 6 Mod. 290; Holt, 303, 646. See, also, as to the conclusiveness of the return, Drown v. Smith, 3 N. H. 299; Bridge v. Wyman, 14 Mass. 195; Wakefield v. Stedman, 12 Pick. 562. The receipt is conclusive evidence of the attachment, and of property in the debtor. Lyman v. Lyman, 11 Mass. 317; Spencer v. Williams, 2 Vt. 212; Bursley v. Hamilton, 15 Pick. 40. And the creditor has also an interest therein. See Clark v. Clough, 3 Greenl. 357; Cooper v. Mowry, 16 Mass. 8. Here, the plaintiffs waived their right to have an inventory taken in consideration of the receipt, as originally shown to their attorney, and of the officer's return of the gross amount. They reposed upon this security, and had no means, subsequently, of ascertaining the nature or value of the goods; and, therefore, the sheriff cannot deny, that he attached goods to the value of $7,000, and the plaintiffs have a vested right against him for that amount, and also in the receipt, as collateral security therefor:—

2d. Have these rights ever been destroyed? The sheriff has, by leave granted by order of court, amended his return by substituting 2,000 for 7,000; but what is the effect of such an amendment upon the right of parties? The discretionary power of the court to allow amendments, is limited in its operation to remedies and forms of proceeding. The leave to amend an officer's return is never granted, unless there is something to amend by. Haven v. Snow, 14 Pick. 28. When leave is given to amend, its effect is only to protect the officer from punishment criminally, for misdemeanor or for forgery, to which he would be liable, if an alteration were made without authority. But the effect of the amendment, when made, is an open question. Emerson v. Upton, 9 Pick. 167, 170. And it cannot be permitted to disturb or devest rights already vested; since this would be to give greater effect to the order of a judge at nisi prius, without a hearing, than to a solemn judgment in bank; inasmuch as an order of leave to amend is not open to revision, nor revisable on error. However the amendment be made, it is made at the peril of the officer. Thatcher v. Miller, 11 Mass. 413; Welles v. Battelle, 11 Mass. 481. The general course of the courts is, first, to ascertain the nature of a proposed amendment, and if it will disturb vested rights to refuse permission to amend. Williams v. Brackett, 8 Mass. 240; Freeman v. Paul, 3 Greenl. 260; Means v. Osgood, 7 Greenl. 146. But whether this prudent forecast be exercised or not, the principle is the same. Vested rights cannot be taken away nor impaired.

3d. The plaintiffs have done nothing to impair the rights vested in them. Neither the sheriff, nor the court, as we have seen, could impair or modify such rights; nor had the attorney, Mr. Brown, any right to consent to any modification thereof. An attorney, it is true, has power to control the proceedings, and to do all acts necessary and conducive to the collection of the debt. But he cannot defeat it; nor compound it (Lewis v. Gamage, 1 Pick. 347); nor assume it, if the judgment debtor is his own creditor to the same, or a greater amount; nor can he receive pay by securities against other persons to be collected and accounted for (Langdon v. Potter, 13 Mass. 319). If, therefore, the return had been altered with Mr. Brown's consent, the alteration would have had no legal effect. But he did not give such consent. His approval of the sheriff's doings goes only to indemnify the sheriff against any action for making the attachment. The paper cannot have the effect of releasing the officer from all liability with regard to the care of the goods, and the solvency of the receiptors, for this would be to make the plaintiffs themselves responsible as bailees, which he could not do; Langdon v. Potter, 13 Mass. 319. Nor is there any usage, anterior to this receipt, which would give validity to the acts of the plaintiff's attorney in the approval of the receipt; and if there were, its being in contravention of law, it could not legalize the act. So, also, the plaintiffs have not approved of the alteration, nor in any wise confirmed it.

4th. If the officer, by virtue of his original return, rendered himself liable to the plaintiffs for the amount of the debt, and if the plaintiff be presumed to know the law, as we say he must be, then the alteration is a fraud upon the plaintiffs, within the allegations of the second count, because it diminishes his liability. At all events, the defendant is liable on the last count. This count does not introduce a new cause of action, because the preceding counts show the nature of the claim, and the latter simply confirms the declaration and the disclosures in the other counts, and could not operate as a surprise upon the defendants. It is only the same cause of action, differently set forth.

Mr. Appleton (with whom were Fessenden & Deblois), for defendant.

The argument for defendants was as follows:

1. The first count is for not safely keeping certain goods, wares, and merchandize, attached in the writ. Pierce v. Allen [unreported]. The defence is, that the attachment was made by direction of the plaintiff's attorney, and that, by the same authority, a receipt was taken, and the officer thereby released from his responsibility for the safe keeping of the goods attached. It is well established, that the officer is discharged when he acts by the authority of the plaintiff. Donham v. Wild, 19 Pick. 520. He is

equally so, when he acts in pursuance of directions given by the attorney to the plaintiff. The sheriff is not bound to make a special service by attachment, without directions to that effect. Betts v. Norris, 3 Shep. [15 Me.] 469. If the attorney may direct an attachment, and if the sheriff be not bound to make one without such directions, it would seem to follow, that if he direct one to be made, he might likewise direct as to the mode and manner of such attachment, and as to the custody of the goods so attached. The powers of an attorney are much more extensive in this country than in England. He may refer an action. Buckland v. Conway, 16 Mass. 396. He may bind his client by entering into a recognizance. 1 Pick. 462. He may admit facts or confess judgment. 5 N. H. 393; 2 N. H. 520. He may release the right of review. 5 N. H. 393. His agreement that the plaintiff shall release bail, operates as a discharge. 1 Murph. 146. He may be a party to an assignment. Gordon v. Coolidge [Case No. 5,606]. He may consent to be defaulted or may discontinue an action. 2 Ld. Raym. 1142. The court will enforce his agreements against his principal. Union Bank v. Geary, 5 Pet. [30 U. S.] 99. Even his compromises will be enforced, though strictly he may have no authority to make any. Holker v. Parker, 7 Cranch [11 U. S.] 436. His directions as to the mode of enforcing an execution will be binding on the sheriff. 7 Cow. 739. His instructions as to time and method of selling on an execution are a sufficient justification to the sheriff. Lynch v. Com., 16 Serg. & R. 368; Scott v. Seiler, 5 Watts, 235. If then by a discontinuance or by a reference of all demands he may entirely vacate the attachment, why may he not modify it? The greater includes the less. If the attorney may not give directions as to the mode in which property attached may be kept, it would seem that he could not direct the surrender of property attached, even though satisfied that it did not belong to the judgment debtor. Indeed, it is equally the interest of all parties that the attorney should have this authority.

2. In the second count, the plaintiff claims on the ground of a false and fraudulent alteration of the return, in relation to the value of the property attached. Claiming the amendment (or alteration) of the return to have been made falsely and fraudulently, the plaintiff would seem to concede the right to amend. The plaintiffs by the record of the proceedings in the suit, Pierce v. Allen, to which they were parties, show, that whatever was done was done by leave of court. They are estopped to contest whatever is therein alleged to have been done under the sanction of the court, whose records they produce. But the court had full authority to authorize the amendment, it being to correct a mistake. The court even after the lapse of twenty years, will allow an officer to amend his return for the pur-

pose of correcting an error. Gilman v. Stetson, 4 Shep. [16 Me.] 125; Eveleth v. Little, Id. 374; Thatcher v. Miller, 11 Mass. 413; Buck v. Hardy, 6 Greenl. 162. The town clerk may amend a record, though others may have contracted upon the faith of it. Chamberlain v. Inhabitants of Dover, 1 Shep. [13 Me.] 466. The granting or refusing leave to amend was purely a matter of discretion in the court, and their determination is conclusive on all parties. Foster v. Haines, 1 Shep. [13 Me.] 307; Sheehy v. Mandeville, 6 Cranch [10 U. S.] 253; Wyman v. Dorr, 3 Greenl. 183; Clapp v. Balch, Id. 216. Leave to amend was granted by a court having competent jurisdiction. So long as a judgment remains in full force, it is in itself evidence of the right of a party to the thing adjudged. Voorhees v. Bank of U. S., 10 Pet. [35 U. S.] 449. Until reversed, the judgments of a court, whether correct or not, are binding on every other court. Elliot v. Piersol, 1 Pet. [26 U. S.] 340; Haskell v. Sumner, 1 Pick. 460.

The plaintiffs claim for a false and fraudulent alteration of a return made by the officer. It was done in pursuance of leave granted by the court. The allegation is, that the officer altered the estimated value of the property attached from the true to a diminished and false value. The alteration does not effect a change in the property attached; that remains identically the same after, as before the amendment. The only alteration is in the estimated value, and for the purpose of correcting a mistake. This may be considered as substantially an action against the defendant for a false return. The burthen, then, is on the plaintiffs to show, that the return is false. The truth of the return is a legal presumption. Clarke v. Lyman, 10 Pick. 47; Boynton v. Willard, Id. 169; Bruce v. Holden, 21 Pick. 189. The amended return, as it stands on the place of the original return, is equally to be presumed true. Chamberlain v. Inhabitants of Dover, 1 Shep. [13 Me.] 472. The evidence offered does not control this presumption of law. The plaintiff has, therefore, made out no claim for damage. Besides, the amendment does not vary the liability of the officer. The extent of the sheriff's liability is the damage actually sustained. Had the officer made no attachment, or falsely returned that he could find no goods, the actual loss arising from such false return would be the measure of damage. Weld v. Bartlett, 10 Mass. 475; Eaton v. Ogier, 2 Greenl. 49; Brooks v. Hoyt, 6 Pick. 469; Woods v. Varnum, 21 Pick. 169; Norton v. Valentine, 3 Shep. [15 Me.] 37; Clark v. Smith, 10 Conn. 1; Weld v. Green, 1 Fairf. [10 Me.] 20. Had there been no amendment, the officer might have shown that the property attached was not the judgment debtor's. Bursley v. Hamilton, 15 Pick. 40; Townsend v. Newell, 14 Pick. 332; 12 Pick. 557. The estimate of value can

no more operate as an estoppel than the assertion of ownership in the receipt. The plaintiff then has sustained no damage by the alteration, as the same facts might have been shown in reduction of damage.

3. The third count alleges that the plaintiff has sustained damage from the alteration of the receipt taken by the officer. But this affords no legal ground of complaint. The receiptor's liability is coextensive with that of the officer. The amendment of the return having been legally made, the alteration of the receipt follows as a necessary consequence. Norris v. Bridgham, 2 Shep. [14 Me.] 431.

4. The amendment, by which the plaintiffs claim to recover for the goods attached according to the amended return should not be allowed. The original writ was for a different cause of action; as different as a claim for seven thousand dollars is different from one for twenty-two hundred dollars. This is substituting a new cause of action, which, under the circumstances of the case, the court will not allow. Eaton v. Ogier, 2 Greenl. 46; Tryon v. Miller, 1 Wheat. [14 U. S.] 11.

STORY, Circuit Justice. In the present case, the property in controversy was attached upon the original writ, and consisted of all the goods in the store of the judgment debtor, Dwight Allen; and at the time when the attachment was made they were estimated in the gross to be of the value of $7,000, and were receipted for to the officer, with the approval of the plaintiff's attorney, by Messrs Appleton and Hill accordingly; and the officer made due return thereof, as of the value of $7,000 upon the writ. Afterwards, upon a discovery, that the value of the goods had been greatly mistaken, and that they did not, in fact, exceed in value the sum of $2,200, the officer made an application to the state court, where the suit was brought, to amend his return, which was granted by the court; and the officer accordingly amended his return, so as to state the value at $2,200, which it is not now denied was the fair value. When the amendment of the return was made, the officer had ceased to be in office; but he was in office when the liberty to amend the return was granted. It is under these circumstances, that the present suit was brought. All the counts in the original declaration proceed upon the ground, that the officer was bound by his return to have the goods forthcoming to the value of the $7,000, stated in the original return. A new count has since been offered to be introduced, under the leave granted by this court to amend the declaration, in which count the value of the goods is stated to be $2,200, and the gravamen is the refusal of the officer to deliver up the same to the new officer, to whom was entrusted the execution, in order

to satisfy the same. And one point is, whether this count does not contain substantially a new cause of action; and, if so, then that it is not admissible under the leave to amend. I think, that the amendment is within the range of that class of cases in which this court has been accustomed to exercise in its discretion the power to amend; for it amounts in legal effect merely to cutting down the claim of the plaintiffs from $7,000 to $2,200. Still, however, it does so materially vary the line of defence, that it must operate as a surprise upon the defendant. I am satisfied that it ought not to be granted, except upon the payment of the costs of the defendant up to the time when the amended count was offered to be filed. So that, if the verdict and judgment of the court shall solely turn upon the new count, it seems to me clear, that the defendant ought to be placed in the same situation, as if he had been apprized of the restricted claim at the commencement of the suit, and had been at liberty, upon paying the $2,200, to escape from all subsequent costs. This is a matter, however, of discretion in the court, as to the terms of granting the amendment.

The real questions however, upon the merits of the case are: (1) Whether the original return of the officer was absolutely conclusive and binding upon him and upon the receiptors as to the value of the goods attached, notwithstanding that valuation was founded on a gross mistake of all the parties, innocently made and without fraud. (2.) If it would, per se, have been so conclusive and binding upon him, whether the case is helped by the amendment made in conformity with the real facts by the authority and leave of the state court. (3.) Whether the plaintiff's attorney, either in virtue of his general authority, as attorney in the suit, or under the special circumstances of this case, had a right to bind his clients by the approval of the receipt.

The last point is mainly dependent upon local habits, usages, and practice in the state, rather than upon any well-defined principles of law, applicable to the general rights, duties, and powers of an attorney; for these necessarily vary in different states, and are governed by such local habits, usages, and practice. By the general principles of law (independent of any statute regulation), the sheriff, or other officer, making an attachment of goods, is bound, as nearly as it reasonably can be done, to give in his return, or in a schedule or inventory annexed thereto, a specific description of the goods attached, their quantity, size and number, and any other circumstances proper to ascertain their identity. But I do not know, that he is absolutely bound to affix any valuation thereto; or that, if he should, that valuation would be conclusive or binding upon the attaching creditor, or upon the debtor, or even upon himself, in all cases;

for he is to have the identical goods forthcoming to meet the exigencies of the execution, and the value of the goods is, or may be, then ascertained by the sale thereof on the execution. In no just sense is the sheriff or other officer at liberty to substitute his own valuation of the goods in lieu of the production of the goods themselves. When, therefore, he chooses to deliver over the goods to any person, who shall agree to hold the same, and to have them forthcoming to meet the exigency of the execution, the party so receipting is but his own bailee, and not the bailee of the attaching creditor. As between himself and his bailee, the sheriff, or other officer may, for his own indemnity, in case the goods are lost, or never returned by the bailee, affix a value to the goods; which value will be conclusive between them, unless there has been some gross mistake or error in the valuation. But if such mistake or error be shown, the sheriff or other officer would not be entitled to recover more from his bailee than he was liable for to the attaching creditor and to the debtor; for he would then have received a full indemnity. In no case, whatsoever, has the attaching creditor any thing to do with the property, after it is attached by the sheriff or other officer; and of course the bailment is res inter alios acta. But it may readily be conceived, that, in many cases, the sheriff, or other officer, might not choose to place the goods attached in the hands of a bailee, or friend of the debtor, for safe custody, without the assent of the creditor; for if he did, and the goods were lost, or wasted, or the bailee should become insolvent, he would be responsible therefor to the creditor. Hence, I presume, the practice has grown up, and it is not an unnatural one for the sheriff or other officer, in cases where the goods are delivered to a bailee on his receipt, to require the consent of the attaching creditor thereto, the effect of which consent must be, that the creditor thereby waives any claim against the sheriff, or other officer, in case the goods should not be forthcoming beyond the amount, which the sheriff or other officer himself is able by the exercise of due diligence to obtain from the bailee or receiptor. The case of Donham v. Wild, 19 Pick. 520, fully recognizes this doctrine; and proceeds upon principles which are entirely satisfactory. But that case by no means establishes the proposition, which has been pressed at the present argument, that the creditor thereby waives all remedy against the sheriff or other officer by assenting to the bailment. In that case, the bailee made a direct contract, not only with the officer, but with the creditor, to deliver back the goods; and the court held, that the officer was not responsible for the sufficiency or the fidelity of the bailee. But it there appeared, that the goods were lost, and that the bailee was insolvent; so that any suit by the officer would have been utterly nugatory. But if the bailee wrongfully withhold the goods, and is not insolvent, I apprehend that it is the duty of the sheriff, or other officer, to pursue the remedy which, under the bailment, he has against him; and if he neglect that duty, the creditor has his remedy over against the sheriff, or other officer. All that the creditor, by his consent to the bailment, is supposed to agree to, is to exonerate the sheriff, or other officer, from all liability for losses occasioned by the insolvency or want of fidelity of the bailee; but not for losses occasioned by the neglect of the sheriff to enforce his own rights and remedies against his bailee. If the cases of De Moranda v. Dunkin, 4 Term R. 119, and Hamilton v. Dalziel, 2 W. Bl. 952, furnish, as they may fairly be deemed to do, an analogy to support the exemption of the officer from responsibility for the solvency or fidelity of the bailee, appointed by the consent of the creditor, the case of Taylor v. Richardson, 8 Term R. 505, qualifies the doctrine, and establishes, that it does not exempt the officer from any other consequences resulting from his own default.

But passing from this to the other consideration of the right and authority of the attorney in the suit to give such consent, on behalf of the creditor, to the delivery of the goods attached to a bailee, or receiptor, I have already suggested, that it must mainly depend upon the local habits, usages and practice in the particular case. If it be, as I take it to be, a very common practice in states, where attachments of property are authorized upon mesne process, to deliver the property to some suitable bailee or receiptor, it is doubtless for the interest, both of the sheriff, or other officer, making the attachment, and of the creditor, that such person should be above exception as to property and solvency. The powers and authorities of attorneys in suits in Massachusetts, and Maine, and probably in many other states, are far more extensive, than they are deemed to be in England. The cases cited at the bar in behalf of the defendant, clearly establish this point. By the law of Maine the officer is not bound to make a special attachment of property, unless directed to do so by the plaintiff or his attorney. Betts v. Norris, 3 Shep. [15 Me.] 469. And the attorney, to whom is intrusted the authority to commence and conduct a suit, is generally understood, in the absence of all special instruction from his client, to possess the authority to make such attachments or not, in his discretion. If he be instructed to make an attachment, it would seem to be a natural incident thereto, that he should act in reference to it throughout, in the manner which he should deem most beneficial to his client; for cases may arise, in which the nature of the property, or its situation (as being perishable, or otherwise subjected to loss or injury) may require, that the attorney should possess authority to give directions, and to make arrangements accord-

ingly with the officer, for the purpose of protecting and preserving the interest of his client. My own opinion strongly is, that the attorney with us is by implication clothed with authority, in all cases of this sort, to do all the acts, which are usual and proper to protect the interests of his client in any attachment, as a part of his ordinary duty. It is for the interest of all clients, that this authority should exist; for it would otherwise be impracticable in many cases, without great expenses and delays, to do many acts, which might be indispensable to the security of the clients; and for any abuse or misuse of his authority, the attorney would doubtless be liable to his client. In short, upon this point, I would apply and follow the doctrine laid down by Lord Kenyon, in De Moranda v. Dunkin, 4 Term R. 120, and say, "The agent was empowered to put the writ in force, which certainly includes the form and mode of executing it;" and I would add, of making it most effectual and secure for his principal, for all purposes of the suit. If, therefore, the question were entirely new, I should not hesitate to say, that, upon the general analogies in our state jurisprudence, the attorney had an implied authority in cases of special attachment to prove and give his consent to the appointment of a bailee or receiptor, if he should deem it most for the interest of his client. But, a fortiori, the doctrine ought to apply, where the practice has become common for the officer to make such bailments, and to take such receipts, with the approval of the attorney; for under such circumstances, if not specially objected to, it may be presumed to be left to the discretion of the attorney by his client. I understand, moreover, that in point of fact, this very question has come several times under the cognizance of the state courts, by whose adjudications upon it I should certainly feel myself bound; and that it has received the very interpretation, which I have maintained.

Then, as to the amendment allowed to be made on the officer's return by the state court: it appears to me, that this court has no authority to revise the decision of the state court upon such a subject. It was incident to the exercise of the general jurisdiction of that court, of the nature and extent and propriety of which, the state court was the exclusive judge. But if it were otherwise, I am far from thinking upon general principles, applicable to amendments, as authorized and allowed in most, if not all the New England states, that it was an undue and unjustifiable exercise of the authority of the power to allow amendments. What was its object? Not to state facts, which were untrue and unfounded in the case; but to make the return conform exactly to the real facts, where, by mistake, an egregious error had occurred, injurious to the rights of the officer, and to the benefit of which error the plaintiffs were in no just sense entitled. It is said, that courts of law have no just authority to allow amendments to be made, which are or may be injurious to the rights or interests of third persons. If by this position be meant their real rights and true interests, positively and absolutely vested in them by law, I agree to that proposition. But if it be meant, that the power of amendment cannot and ought not to be exercised by the court to correct a positive mistake, and to conform the return to the true state of the facts, I am by no means prepared to admit either the correctness, or the validity, of the proposition, in point of law. On the contrary, as I understand it, it is the duty of the court, in fit cases, as an exercise of sound discretion, to allow such amendments, where they are in furtherance of public justice, and to remedy mischiefs, resulting from accident or mistake. In the present case, the attachment was made of a shop of goods, in general terms, valued, in gross, at $7,000. Suppose its real value were only $2,200, and the creditor's debt should be $2,200 only, as finally fixed by the judgment. Could a second creditor, attaching the same property, be entitled to hold, under the second attachment, the supposed surplus beyond the first judgment, when, in fact, there was none? And might not the court allow an amendment to be made in the first return, so as to conform to the admitted facts? But the present case is not that of a third person; but of the plaintiff in the suit. As to him, the court has, in my judgment, a perfect authority to allow such amendments to be made in the return, as shall conform to the truth and justice of the case, and correct an innocent mistake and mischievous error. The court are not bound to allow the amendment as of course; but it is an exercise of sound discretion under all the circumstances of the case. If there be fraud, or gross laches, or reasonable ground to suspect that the creditor may be unjustly damaged in his rights thereby, the court ought certainly to refuse the amendment. And if the officer acts fraudulently in procuring the amendment, the creditor will certainly be entitled to his full remedy for the fraud, notwithstanding the amendment.

The argument upon the other point is, that the return is an estoppel both to the officer and to the receiptor as to the value of the goods attached; and that it is conclusive upon all the parties. It was certainly a very loose and incorrect mode of making this attachment, to make a return of a shop of goods, without any schedule or inventory of the quantity, quality, or nature of the goods; and the officer (as has been already suggested), had, strictly speaking, no right to affix any value thereto. It was no part of his duty. That duty was to return a schedule or inventory of the goods, with an appropriate description, so as to have them forthcoming, and identified, to satisfy the execution. The very nature of such a valuation, so set upon a store of goods, must necessarily be deemed to be merely conjectural, and liable to mis-

take and error. The creditor is not obliged to agree to any such valuation, but may insist on a schedule or inventory of the goods. If he does consent to the valuation, he takes it subject to all the natural consequences. Prima facie, it will be taken to be a fair and just valuation; and the onus probandi is on the officer to establish the contrary. But in no just sense can it be deemed an estoppel, without producing manifest and irretrievable injustice. The plaintiff can never be injured, if he was returned, to satisfy the execution, all the goods, or their entire value. Suppose the shop of goods had been forthcoming, and delivered up in satisfaction of the execution; what ground can there be to say, that the creditor is entitled to more than the goods? Surely he could have no legal right to say, that he would reject the goods, and insist upon the $7,000. It may be said, that if the return can thus be amended, or the return of the value be controverted, that it may lead to frauds. It may be so; but cases of fraud will take care of themselves; and courts of justice are not to create estoppels, always odious in the law, upon the ground of the possibility of fraud. If it be said, that the creditor may be by the valuation lulled into security, and prevented from attaching other property, that suggestion admits of a ready answer. If the creditor is thus misled by the fraud or imprudence of the officer, and other property might have been attached to cover the deficiency, if the true value of the goods attached had been known, upon proof of such facts, the creditor would be entitled to an adequate remedy against the officer. But if it was a mutual and innocent mistake on both sides, what ground is there to say, that the creditor should profit by it, since it has been an involuntary error. It is as much the laches of the creditor as of the officer not to have exercised more vigilance. The case of Wakefield v. Stedman, 12 Pick. 562, considered with reference to the facts (it was the case of a horse, valued in the receipt of the receiptor at fifty dollars), does not appear to me necessarily to inculcate any different doctrine. The court there admit, that the value would not be conclusive in case of fraud; and I think it would not be in cases of gross mistake. But where the value is conjectural, and is presumed to be fairly stated, it ought to prevail, unless there be a gross over valuation. The case of Mildmay v. Smith, 2 Saund. 343, is distinguishable. The question there arose upon a writ of error, where the sheriff had returned, that he had seized goods in execution to the amount of £160, which had been rescued from him. There was nothing on the record to show that this was not the true value; and the court held the sheriff concluded by it. But in the same case, the court held, that it would have been different

if the sheriff had returned the goods with their value, and that they remained in his hands for want of buyers; for the sheriff would then have done his duty, and there would be no default in him; and he is not liable for the value returned. To the same effect is the doctrine stated by Lord Holt in Clerk v. Withers, 2 Ld. Raym. 1072, 1075, where he recognizes the authority of Mildmay v. Smith. Now, the very distinction taken in the latter, is precisely that on which I rely. In an action on the case, the officer is not liable for the value returned, unless he has been guilty of some default or negligence.

There is no doubt, that, notwithstanding the officer's return, that the property attached is the debtor's, he and the receiptor may each show, that, in point of fact, it belonged to a third person; and yet this may be said to contradict his return. Indeed, in all cases, where an officer is sued for a false return, or for not having goods attached forthcoming to satisfy the execution, or for any other official misfeasance or negligence, the rule is clear, that the plaintiff is entitled to recover no more than what he has actually lost by such misfeasance or negligence. The case of Weld v. Green, 1 Fairf. [10 Me.] 20, fully recognized this doctrine. So that, after all, in my judgment, the present case comes to this, what damage has the creditor actually sustained by the amendment of the return? To that he is entitled; and that is the true value of the goods attached, and nothing more. It is admitted, indeed, in the present case, that the true value is $2,200 only, and not $7,000.

In the view, therefore, which I take of the case, the merits of the controversy, upon the points already suggested, are with the defendant. He is liable to the plaintiffs for the true value of the goods, $2,200, and no more.

I have not adverted to other points or facts relied upon by the defendant as in the cause, because upon those already stated, the whole merits are, in my judgment, exhausted; unless, indeed, so far as the point is concerned, that no demand was made upon the officer within thirty days after the execution issued for the goods by the new officer, to whom the execution was committed. Whether this be so or not, I do not know; nor is it agreed by the parties. It is a matter of fact, which must be ascertained, if controverted by the jury. If no demand was, in fact, made within the thirty days, then the right of the plaintiffs seems to me entirely gone. Norris v. Bridgham, 2 Shep. [14 Me.] 481. I do not think, that it is indispensable, that that fact should appear upon the return of the officer under this execution; or if necessary, I know of no reason why the return may not now be amended by leave of the court, to conform to the facts.