Miller *v.* Moses.

---

## GILBERT MILLER *versus* OLIVER MOSES.

The return upon a replevin writ should state precisely what property is thereby replevied; if it does not, the sureties on the replevin bond are not liable to return what was not taken.

A surety on a replevin bond is not estopped by the recitals therein to show how much of the property mentioned in the writ was actually replevied, when the officer's return is indefinite in this particular.

Nor is he estopped by the return of the officer, as to the amount of property replevied, unless the return is definite, distinct and certain in this respect.

Where, by the writ, the officer was commanded to replevy eleven different parcels of wood, situated in various towns mentioned, along the line of a railroad, with the number of cords in each parcel distinctly stated, and the officer returned thereon that he had "replevied all the wood at the various places within mentioned;"— *Held*, that the return was indefinite and uncertain as to the quantity of wood replevied.

Miller *v.* Moses.

A judgment in replevin that "the said wood be returned and restored to the said" defendant, "irrepleviable, with costs," &c., refers *only to the* wood actually replevied.

At common law, *nil debet* is not a good plea to debt on bond.

But, if pleaded and joined, the obligor may, it seems, prove any fact tending to reduce his indebtedness.

. ON REPORT.

DEBT on a replevin bond, dated Dec. 16, 1862, given by the city of Bath, as principal, and the defendant and one Linscott, as sureties, in the penal sum of $7,914.

Plea, *nil debet* and joinder, with a brief statement alleging substantially that the wood replevied in *Miller* v. *Bath* was not legally attached, and that what was attached was much less in quantity than that stated in the bond, and less than the estimated amount stated in the plaintiff's returns upon the several writs of attachment.

On a writ in favor of *Azor Dyer* v. *The Androscoggin Railroad Co.*, the plaintiff, as deputy sheriff for the county of Androscoggin, on Sept. 9, 1862, made a return as follows : —

"Androscoggin, ss. — September 9th, 1862.

"By virtue of this writ, I attached about three hundred and sixty-five cords of wood, as the property of the within Androscoggin Railroad Company, valued at nine hundred and ten dollars, situated as follows; in the town of East Livermore, about one hundred and eighty cords of wood at Livermore Falls depot; [also two hundred sleepers at Livermore Falls depot, and one hundred and fifty cords of wood and eighty sleepers at East Livermore station;] also thirty-five cords of wood at Strickland's Ferry station, [and a lot of timber for wood-shed, said sleepers valued at fifty-six dollars and timber valued at ten dollars;] also the following lot of wood in Leeds, viz., about twenty cords at Leeds Centre depot, valued at fifty dollars; about fifty cords of wood valued at one hundred and twenty-five dollars, [also ninety sleepers valued at eighteen dollars,] on line of said road at Curtis' Corner, and about eighty-five cords of wood

on line of railroad, near the Jerry Day Crossing, valued at two hundred dollars; also, September 10, 1862, I attached about six hundred and thirty-eight cords of wood in the town of Wales, valued at sixteen hundred dollars, situated as follows, five hundred cords on line of railroad and about one hundred rods south of Leeds Crossing, and one hundred and thirty-eight cords, about one hundred and fifty rods south of Leeds Crossing; also, on the same day, I attached another lot of wood sawed, estimated to contain two hundred and twenty-five cords, situated as follows, near the wood-shed at Little River station, in the town of Lisbon, as the property of said corporation, and, on the same day, I attached another lot of wood as the property of said corporation, estimated to contain eighteen cords, in the wood-shed at Lisbon Factory station, in the town of Lisbon, and, within five days after the above attachments, I filed in the offices of the town clerks in the several towns within named, a true copy of so much of my return on this writ as relates to the attachments in the several towns, the names of the parties, the date of said writ, and the Court to which the same is returnable, and the amount that I was commanded to attach on said writ.          Gilbert Miller, *Deputy Sheriff*."

On Dec. 16, 1862, the city of Bath, claiming to be the owner of so much of the wood thus attached as is not included within the brackets, sued out a writ of replevin, wherein the officer was commanded to replevy the goods and chattels following, viz. :—

One hundred and eighty cords of wood at the Livermore Falls depot, also thirty-five cords of sawed wood, southerly of and near to Strickland's Ferry, also twenty cords of wood at Leeds Center depot, also fifty cords near Curtis' Corner, also eighty-five cords of wood in the town of Leeds, near the Jerry Day Crossing, also five hundred cords of wood in the town of Wales, about one hundred rods south of Leeds Crossing, also one hundred and thirty-eight cords of wood in the town of Wales, about one hundred and fifty rods below Leeds Crossing, also eighteen cords of wood at the

Lisbon Factory depot, in the wood-shed, also two hundred and twenty-five cords of wood, in the wood-shed at Little River station, also forty cords of wood, near the Lisbon Factory depot, also thirty-eight cords of wood, at Curtis' Corner,—all belonging to the city of Bath, in the county of Sagadahoc, and now taken and detained by Gilbert Miller, at the places above described, in the county aforesaid; which amounted in all to 1329 cords.

The bond taken by the coroner, prior to serving the replevin writ, was the one in suit, and its penal sum was erroneously fixed at twice the value of 1319 cords of wood, at $3 per cord, instead of 1329 cords, the number mentioned in the writ; but it was for the sum which he was directed in the writ to take. The condition of the bond contains a recital as follows:—"The condition of the above obligation is such,—that whereas the said city of Bath hath this day commenced against the said Gilbert Miller, an action of replevin for thirteen hundred and nineteen cords of wood, more particularly described in said writ, they say the said Gilbert Miller hath unlawfully taken;—Now, therefore," &c.

On the replevin writ was a return as follows:—

"Androscoggin, ss.—Dec. 19, 1862.—By virtue of the within writ, having first taken a bond as prescribed by law, I have this day replevied all of the wood at the various places within mentioned, and have delivered it to the city of Bath," &c.          "John Hamlin, *Coroner*."

In the replevin suit a judgment was entered and recorded as follows:—

"This action was entered at the January term of this Court, A. D., 1863, and thence continued to the April term, A. D., 1863. The action was thence continued on report and transferred to the Supreme Judicial Court for the Western District, for adjudication upon questions of law and fact arising in the case, as per report and pleadings on file will more fully appear, from term to term, to this term, and on the eighth day of July, A. D., 1864, the Clerk of this

Court received from the Clerk of the Court for the Western District, the decision of the Court in the premises as follows : — 'Plaintiff nonsuit. — Judgment for a Return.' " It is therefore considered by the Court that the said wood be returned and restored to the said Gilbert Miller irrepleviable with costs taxed at forty-nine dollars and eleven cents."

The defendant offered to show by parol evidence that the whole amount of wood mentioned in the replevin bond was not attached by Miller or replevied by the coroner, which was objected to by the plaintiff, but the testimony was admitted by the presiding Judge for the purposes of the trial. After the testimony was closed, the parties agreed that the presiding Judge might determine the actual quantity of wood attached by Miller, and also the quantity taken by the coroner and delivered to the plaintiff in replevin, the plaintiff claiming that these questions were immaterial and that the findings could not affect the decision of the case.

The parties then submitted the case to the whole Court to determine what judgment should be given on the whole case, upon the testimony legally admissible and the findings of the presiding Judge, and to render judgment accordingly.

The presiding Judge determined that the actual quantity of wood attached was 935 cords, and the actual quantity replevied and delivered to the plaintiff in replevin was 930 cords.

*Jabez C. Woodman*, for the plaintiff.

The writ commanded the coroner to replevy 1329 cords of wood, and deliver the same to the city of Bath. Coroner returned that he "replevied all the wood at the various places within mentioned and delivered it to the city of Bath as within directed." Miller recovered judgment " that the said wood" [that is, all the wood described in the replevin writ,] " be returned and restored to Miller irrepleviable," &c.

On parol testimony, "the presiding Judge determined the actual quantity of wood replevied."

Miller *v.* Moses.

The parol testimony was not admissible to contradict the coroner's return, except in a suit against him for a false return. *Slayton* v. *Chester*, 4 Mass., 479; *Stinson & al.* v. *Snow*, 10 Maine, 265; *Patterson* v. *Creighton*, 42 Maine, 378; *Agry* v. *Betts*, 12 Maine, 417; *Wyer* v. *Andrews*, 13 Maine, 168; *Grover* v. *Howard*, 31 Maine, 548; *Cowan* v. *Wheeler*, 31 Maine, 442; *Bunker* v. *Gilmore*, 40 Maine, 93; *Bolt* v. *Burnell*, 9 Mass., 98; same case, 11 Mass., 165; *Lawrence* v. *Pond*, 17 Mass., 434; *Whitaker* v. *Sumner*, 7 Pick., 555; *Bamford* v. *Melvin*, 7 Maine, 21; *McKeen* v. *Gammon*, 33 Maine, 190.

The defendant being a privy to that judgment, is equally concluded by the return. *Porter* v. *Rummery*, 10 Mass., 68; *Merrill* v. *Suffolk Bank*, 31 Maine, 61; *Bean* v. *Parker*, 67 Mass., 591, 592, 600; *Came* v. *Bridgham*, 39 Maine, 40.

The defendant is also estopped by the recital in the bond, " that the city of Bath hath this day commenced against the said Miller, an action of replevin for 1319 cords of wood, more particularly described in the writ," &c. *Winchell* v. *Stiles*, 15 Mass., 230, 232. Indorsers of writs are analogous. *Harkness* v. *Farley*, 11 Maine, 491; *Chase* v. *Gilman*, 15 Maine, 64, 67; *Craig* v. *Fessenden*, 21 Maine, 34. That Moses was privy to the judgment recovered by Miller appears from the form of the writ prescribed. Stat. of 1821, c. 63, § 8; *Pettygrove* v. *Hoyt*, 11 Maine, 69; *Thomas* v. *Spofford*, 46 Maine, 411. If defendant can prove the officer did not take as much as is stated in the return, he can prove he did not take any.

The estimates of the wood, as by the returns of attachment, were not originally conclusive upon third parties, but they have been adopted by the defendant's principal, and he, as a privy, is bound also.

Bath and sureties are concluded by the judgment of return. *Bannister* v. *Higginson*, 15 Maine, 78; *Granger* v. *Clark*, 22 Maine, 129; *Pierce* v. *Strickland*, 26 Maine, 293; *Smith* v. *Keen*, 26 Maine, 420; *Pease* v. *Whitten*,

31 Maine, 118; *Footman* v. *Stetson*, 32 Maine, 18; *Wood-man* v. *Smith*, 37 Maine, 24; *Willard* v. *Whitney*, 49 Maine, 238; *Sidensparker* v. *Sidensparker*, 52 Maine, 481; *Bath* v. *Miller*, 53 Maine, 308.

A question that was involved, and might have been decided in the replevin suit, could not be re-opened and tried in this action against the defendant, who was a privy in law to the original judgment. *Emery* v. *Goodwin*, 13 Maine, 14; *Marriot* v. *Hampton*, 7 T. R., 269; *Leguen* v. *Governeur & al.*, 1 Johns. Cases, 436; *York Man. Co.* v. *Cutts*, 18 Maine, 211; *Smith* v. *McIvor*, 9 Wheat., 535, 537; *Simpson* v. *Hart*, 1 Johns. Ch. R., 95; *Williams* v. *Lee*, 3 Atkins, 223; *Moses* v. *McFarlan*, 2 Burrows, 209; *Phillips* v. *Hunter*, 2 H. Bl., 415; *Homer* v. *Fish & al.*, 1 Pick., 439; *Bateman* v. *Willoe*, 1 Sch. & Lef., 204, 205; *M'Vicar* v. *Wolcott*, 4 Johns., 534; *Simpson* v. *Hart*, 14 Johns., 77; *Anderson* v. *Roberts*, 18 Johns., 534; *Russ* v. *Wilson*, 22 Maine, 211; *Marine Ins. Co. of Alexandria* v. *Hodgson*, 7 Cranch, 336; *Hopkins* v. *Lee*, 6 Wheat., 113; *Smith* v. *Lowry*, 1 Johns. Ch., 322; *Hawley* v. *Mancius*, 7 Johns. Ch., 182.

*S. & J. W. May*, for the defendant.

APPLETON, C. J.— The plaintiff, a deputy Sheriff, having, on 9th September, 1862, a writ in his hands in favor of Azor Dyer *v.* The Androscoggin Rail Road Company, attached at different places quantities of wood as the property of said Railroad Corporation, describing the lots as containing *about* so many cords, or estimated to contain so many cords, describing the places where these estimated quantities were situated, and made return of·his doings thereon. He subsequently attached the same and other wood on other writs against the same corporation and other defendants, and made similar returns thereon.

The plaintiff having this wood thus attached and described in his returns on the several writs in his hands, the city of Bath, on Dec 16, 1862, claiming to be the owner of the same

wood, sued out their writ of replevin, commanding the officer to replevy the said lots described in the plaintiff's return, stating the actual amount to be replevied at the several places where the wood was situated, according to the estimated amounts in the plaintiff's several returns and in his notice to the Androscoggin Railroad dated Dec. 11, 1862. The amount ordered to be replevied was thirteen hundred and twenty-nine cords. The replevin bond erroneously described the replevin writ as "for thirteen hundred and nineteen cords of wood, as more particularly described in said writ."

The coroner by whom the replevin writ was served made his return in the following words:—"Androscoggin, ss., Dec. 19, 1862. By virtue of the within writ, having first taken a bond as prescribed by law, I have *this* day replevied all the wood at the various places within mentioned, and have delivered it to the city of Bath as within directed.

John Hamlin, Coroner."

The attachment of the plaintiff was dated September 9, 1862. The replevin writ bears the date of Dec. 16, 1862. It is not pretended that the plaintiff, when he made his attachments, or the coroner, when he replevied the wood thus attached, caused the true amount to be ascertained by a survey thereof.

On the trial of the replevin suit, the *City of Bath* v. *Miller*, the then defendant, but present plaintiff, justified under the writs before referred to and his several returns thereon, in which he had described his attachments as being of an estimated and not of a definite and ascertained quantity.

The City of Bath, failing in their action of replevin to make out a good title to the wood replevied, the judgment of the Court was, that, "the said wood be returned and restored to the said Gilbert Miller irrepleviable," &c. This judgment could only refer to the wood actually replevied. It could embrace no more. It did not necessarily cover the amount ordered to be replevied, for the officer might not be able to find the quantity embraced in the writ. It could

have reference only to the quantity actually replevied, and that was to be ascertained from the return of the officer by whom service was made. The bond given was for an amount different from that described in the writ.

Judgment having been in favor of Miller in the replevin suit and a return ordered, and the wood not being restored, he brings his suit upon the replevin bond. He had attached divers lots of wood at different specified places. The quantity attached was left indefinite and uncertain. The wood had been replevied from his possession. It was ordered by the judgment of the Court, before which the replevin suit was pending, to be restored. This is not done. He is entitled to the wood actually attached or its value, to be accounted for on the several executions in the suits upon which his attachments were made, or in case the attachments were lost, to the debtors as whose property the wood was attached.

The writ commands the replevying of 1329 cords. The bond is in double the value of 1319 cords. The quantity actually attached was 935 cords, of which only 930 were replevied. These facts appear on inspection of the papers, or are found by the presiding Justice to whom the question of the quantity attached and replevied was referred. The amount replevied was all that was secured by the bond, unless it be held that it is security for what the officer failed to replevy.

According to the plaintiff's returns on the several writs on which the wood was attached, his attachments were of certain lots at different places, of an estimated but uncertain quantity. Neither the creditors nor the debtors in those suits could hold the plaintiff liable, as an officer, for more than the actual amount. The attachments, though indefinite as to quantity, would hold the lots described and no more. The amount attached being thus indefinite, the actual amount is all for which the plaintiff, as a deputy sheriff, could be held responsible. The value of the wood actually attached constituted the measure of his liability.

He could not be made liable for non-existent wood by reason of an over estimate of quantity, when his return described not the actual but the estimated quantity. He could not have been made liable by his return for more than he actually attached.

It was undoubtedly within the power of the Court, if convinced of an error in the return, to permit that error to be corrected for the purposes of justice, by allowing the officer to amend in accordance with the fact, though such power should be reluctantly and cautiously exercised. *Pierce* v. *Strickland*, 2 Story, 292.

The plaintiff sues as trustee. The amount recovered, if the attachments have been preserved, will enure to the benefit of the creditors. If not preserved, for that of the debtors in the several suits in which the attachments were made. As trustee, the plaintiff could make no personal gains. He is entitled to recover only to the extent of his liability. In *Bartlett* v. *Kidder*, 14 Gray, 449, personal property owned in common was attached on mesne process against one of the owners, and replevin brought in the name of all against the attaching officer and dismissed. It was there held that the measure of damages, in an action on the replevin bond, was the value of that one's interest. "The principle," remarks DEWEY, J., "upon which such facts may be shown in mitigation of damages, is, that full indemnity will be thus given to the obligee of the bond; and this is all that he is entitled to in the hearing in equity." In *Davis* v. *Harding*, 3 Allen, 302, in a suit upon a replevin bond, it was decided that it might be proved, in mitigation of damages, that the action of replevin was defeated solely because it was prematurely commenced. So, in *Huggeford* v. *Ford*, 11 Pick., 223, where the goods, when attached, were subject to duties, and the plaintiff in replevin paid them, the amount thus paid was deducted from the valuation in a suit upon the bond. In *Farnham* v. *Moor*, 21 Maine, 509, in a suit upon a replevin bond, "judgment is to be rendered upon default," remarks WHITMAN, C. J., "for the plaintiff, for as

much as he is in equity and good conscience entitled to re-cover."

The evidence to show the actual amount of wood attached should be received, unless there is some stringent rule of law to prevent our arriving at a just and equitable result. Is the plaintiff, suing as trustee for others, to recover beyond the amount of his liability to those for whom he is thus trustee? Are the defendants estopped from showing the exact extent of such liability?

The bond constitutes no estoppel. It is ordinarily given before the goods are replevied. It is based upon the writ, and assumes that what is ordered to be replevied will be so replevied. But such may not be the case. The articles des-cribed in the writ and in the bond corresponding to the writ, may not all be found, and, if not found, of course they can-not be replevied. The officer may find a part, and for those the bond will be security, and for no more. The amount thus replevied should appear in his return, — but if, through the neglect of the officer, it does not so appear, the sureties are, nevertheless, not to be held liable to return what was never taken.

If it be conceded, as a general rule, that the return of the officer as to what was replevied is conclusive and cannot be contradicted, the concession will not affect the right of the obligees to show, in the case at bar, what was actually re-plevied. The return of the coroner is vague and indefinite. He does not refer to the replevin writ for amounts. The attachments by the plaintiff were made Sept. 9, 1862. The service of the replevin writ on him was made Dec. 19, 1862. The return is, —"I have *this* day replevied all the wood at the various places within mentioned." This means all the wood *then* there, not what was there days or months before. It might embrace all the wood which had been attached and which was ordered to be replevied, or it might not. It is left uncertain. The officer took all that was then "at the various places within mentioned," without in any way de-fining the quantity taken. How much was replevied?

Granting that his return should be construed as *prima facie* embracing all that is described in the writ, still it does not conclusively embrace all. It leaves the actual amount replevied uncertain and contingent, depending upon whether there had been a change between the date of the attachment and that of the service of the replevin writ. To constitute an estoppel, the return of the officer should be definite, distinct and certain, and those elements are wanting therein. The defendants assuredly should not suffer from the vagueness of the plaintiff's return.

The judgment of the Court was that "the said wood be returned and restored to the said Gilbert Miller." What wood? The judgment can refer only to the wood actually replevied, not to that ordered to be replevied and not replevied. The variations between these quantities may be greater or less. The present plaintiff, in his brief statement, justified under his vague and indefinite attachments, and his justification was co-extensive with those attachments. The return of the coroner, when replevying, was vague and uncertain. No question was made, no issue raised as to the number of cords attached or replevied. "An estoppel," remarks WILDE, J., in *Gould* v. *Richardson*, 6 Pick., 369, "must be certain to every intent. Therefore, if a thing be not precisely and expressly alleged, it will be no estoppel." Replevin is a process *in rem*, and the wood actually replevied, not that ordered to be replevied, was alone in controversy. The plaintiff in replevin claimed only so much as having been attached was replevied, and the defendant justified only for that amount. How much was attached? How much replevied? The writ does not necessarily show, for the officer serving it may fail to obtain possession of the amount specified therein. Half might be taken or the whole, but the writ would not determine the quantity. Suppose a replevin writ issues for three horses, and the officer replevies but two, and the judgment be for the return of "said horses," would the obligors in the replevin bond be liable for more than the two replevied? The judgment is

for a return to the defendant of what is taken from him. To that only is he entitled. To that only does he show any right. That only was in controversy, and to that only does the judgment relate. The officer replevying left the amount uncertain, indefinite. The Court could not act upon what was not replevied, and, as the justification related only to what was replevied, and that was left an uncertain quantity, the judgment can only refer to the same. It was the duty of the officer replevying to state precisely what he replevied. His omission to do so can give no new rights to the plaintiff, nor impose increased obligations on the defendants. The amount replevied was left uncertain by the coroner. It has been ascertained by the Court,—and both law and equity forbid that the plaintiff should recover for what was never taken from him.

The plaintiff returned on his writs that he attached *about* so many cords. He was not estopped to show the exact amount. Still less should he ask that the defendants should be estopped to prove the truth. The indefiniteness of the amount attached was his fault, and if he over estimated amounts, which he returned as uncertain, he should not seek to make them suffer on account of the indefiniteness of the return, which it was his duty to have made clear and definite.

His indefinite return is the cause of the present litigation, and he should not be permitted to take advantage of his own misconduct in not defining what he attached, nor should he be allowed to recover for more than he was liable for by virtue of his attachments,—that is, he should be held responsible for what he actually attached, and no more.

Further, the defendant, upon the principles of pleading, would seem to be let into the partial defence upon which he relies.

At common law the proper plea to debt on bond is *non est facium*. *Nil debet* was the plea in the present case, and it was joined. But "*nil debet* is not a good plea to debt on bond; and the plea is ill on demurrer. It being the nature

of the plea and not the manner of pleading it, that is defective."

"But, if *nil debet* is pleaded to debt on bond, and the plaintiff, instead of demurring, accepts the plea and joins in the issue; the defendant is at liberty to prove any and every special matter of defence, which might be proved under the same plea, in debt on simple contract,—such as want of consideration, payment, release, usury, infancy, &c. For the plaintiff, by accepting the plea, founds his demand solely upon the defendant's being indebted; and thus waives the estoppel or conclusive evidence of that fact, which the deed would have furnished against the defendant, under the plea of *non est factum.*" Gould on Pleading, c. 6, p. 1, § 12.

In *Rawlins* v. *Danvers*, 5 Esp., 38, the action was debt on a bail bond, to which the defendant pleaded *nil debet*, and issue was joined. Lord ELLENBOROUGH said,—" He was of opinion that, as the plea had not been demurred to, the plaintiff had let the defendant into any defence that he could prove."

By this plea " in debt on bond, everything is thrown open," remarks TILGHMAN, C. J., in *Evans* v. *Tatem*, 9 S. & R., 252. " It puts in issue every material fact in the declaration, if pleaded and not demurred to." *Jansen* v. *Ostrander*, 1 Cowen, 670.

If R. S., c. 82, § 55, is to be regarded as applicable, then the defendants, under the plea of *nil debet*, would be " entitled to every defence" that they would have by any form of pleading.

It would therefore seem that the defendant, under this plea, in the case of a replevin bond, should be permitted to show any fact either negativing or reducing their indebtedness to the plaintiff.

The value of the wood, as stated in the writ and the bond, is binding upon the defendant. The plaintiff is not estopped by this valuation, but may show the true value. In

the absence of proof, the valuation in the bond is to be regarded as the actual value of the property replevied.

> *Defendant defaulted for the value of 930 cords*
> *of wood. — Damages to be assessed by the clerk.*

CUTTING, KENT, DICKERSON and DANFORTH, JJ., concurred.

WALTON and BARROWS, JJ., dissented.