WILLIAM M. PARROTT & another *vs.* JOHN B. DEARBORN.

An officer, who has attached a horse and placed it in a suitable stable and made the stabler keeper, is liable for the neglect of the stabler to keep the horse with ordinary care; but if neither he himself, nor any one for whose care of the horse he is responsible, knows, or is negligent in not knowing. that the horse has peculiar tricks or habits, he is not liable for an omission of extraordinary care to guard the horse against injury by reason of them.

TORT by Parrott and Henry Hodgkins, against a deputy of the sheriff of Suffolk. Trial in the superior court, before *Reed*, J., who allowed the following bill of exceptions :

" The only issue between the parties was that of the negligence of the defendant in the care and keeping of a horse. It

appeared in evidence that the plaintiffs were partners, doing business in Boston; that on October 19, 1868, the defendant received a writ against them in favor of Asa Tirrell, with instructions to attach personal property; that at about four o'clock in the afternoon of that day he attached the stock and fixtures in their store, and also the horse, then standing harnessed to a wagon in front of the store; that Parrott had gone to Gloucester for the night; but that Hodgkins was present, and informed the defendant that they should give bond and dissolve the attachment the next morning. The defendant placed the horse and wagon in the hands of his keeper, Tobias Roby, with directions to take them to a stable called Nims's stable, at the same time giving him a deputation in writing to the proprietor of said stable as his keeper of them. Roby drove the horse to the stable, and delivered it, with the deputation in writing as keeper, to the foreman of the stable; and himself returned to the plain· tiffs' store as keeper of the property there attached, and remained there till the bond was given on the following day. On such return, he was informed by the plaintiffs' driver that it would not be safe to tie the horse in the stable, as it had a habit of pulling back and might be injured. Roby did not communicate this to the defendant or the stabler. When the defendant attached the horse, he asked no questions and received no information. There was no evidence that this habit of the horse, if it existed, was known to the plaintiffs. The horse remained in the stable till about noon the next day, when, a bond having been given and the attachment dissolved, Roby returned the horse to the plaintiffs at their store. The plaintiffs did not know where the defendant took the horse when he attached it, nor where it had been kept when returned. Evidence was introduced tending to show that the horse was perfectly sound when attached by the defendant, but when returned was permanently lamed and his value greatly impaired; and that said injury was caused by improper and negligent treatment and care while in the stable, and at no other place. Evidence was introduced by the defendant tending to show that such injury was caused by the vicious habits of the horse, and not by any

negligence or want of care, and that the stable where the horse was kept was a suitable place, and maintained by an experienced and competent man.

" The judge instructed the jury, that the question for them to consider was, whether the defendant had been guilty of any negligence; that the defendant, having taken the horse on attachment, was responsible for the same degree of care, and only the same degree of care, as he would have been if he had hired the horse of the plaintiffs; that the first question for the jury to settle was, whether, under the circumstances, the defendant had selected a proper stable, such as a prudent man hiring a horse would have done; that if they were satisfied that he had done this, his whole duty would then have been discharged; that it would then be immaterial what was done to or with the horse afterwards in the stable; that, whatever might have taken place there, the defendant would not be liable therefor, and that their verdict should be for him; but that, if they should find that the defendant had not selected a proper stable, then and then only it would be material to inquire what had been done with the horse in the stable, and whether there had been any negligence or want of care there in the treatment of the horse whereby it had been injured; and if, on such inquiry, they should find that the defendant had not selected a proper stable, and that there had been negligence in the care of the horse in the stable, the defendant would then be liable for such negligence. The judge further instructed the jury, that, if the horse had any habit which rendered special caution necessary in care of the horse, the plaintiffs were bound to communicate it to the defendant, to the same extent as they would be to a person hiring a horse; and that the communication of such fact to Roby, as stated above, would not affect the defendant, as it was not communicated to him. The verdict was for the defendant, and to the foregoing instructions the plaintiffs except."

*C. T. Russell & S. Bancroft*, for the plaintiffs.

*R. M. Morse, Jr.*, for the defendant.

AMES, J. Upon the attachment of personal property on mesne process, it is the duty of the officer to keep it safely

until it shall be required either to be taken on execution in favor of the creditor or to be restored to the debtor, according to the event of the suit. This duty he may perform personally, or by the agency of others, at his convenience and discretion; but in either event the property is in his keeping, and he is responsible for its safety. If he sees fit to employ agents of his own selection, he cannot thereby limit his responsibility for any loss or damage that may befall the property, to his own personal default or neglect. He would be responsible, according to the general law of agency, for negligence, mismanagement or bad faith on the part of his servants or agents. The general owner of the attached property is not a party to the contract between the officer and such agents, and has no control over their selection. Even if the attaching officer in this case should be held responsible, according to the rule given to the jury, "only for the same degree of care as he would have been if he had hired the horse of the plaintiffs," he would still be responsible for the default and negligence of his servant. Story on Bailments, § 400. It has repeatedly been decided that the keeper is merely the servant of the officer. The instructions given to the jury assumed, throughout, that the only duty of the attaching officer was to select a proper stable in which to put the horse, "such as a prudent man hiring a horse" would have selected; and that, if he had done this, it would be wholly immaterial what might be the treatment of the horse afterwards at the stable. This was an erroneous view of the law, and the jury should have been instructed that the officer would be responsible for any want of due and ordinary care, on the part of himself or his keeper, in the treatment of the horse after the attachment. As to the risk of injury from peculiar habits or tricks of the horse, his duty to take precautions against such injury would depend entirely upon his information, or means of knowledge, upon the subject of those tricks or peculiarities.

*Exceptions sustained.*