Sewall C. Strout and another, *vs.* William L. Pennell.

Cumberland.    Opinion December 27, 1882.

*Officer, liability of.    Levy.    Practice.    Amendment.*

In cases where an officer is called upon by the nature of the service to be performed, to find some person or thing, or ascertain some fact, or determine some question, upon an inquiry and investigation to be instituted by him after the process comes into his hands, he is required to exercise reasonable care, skill and diligence in the performance of the duty, but he is not liable as an insurer.

A sheriff, who erroneously certifies in a levy upon land of an execution-debtor that the appraisers were disinterested, when they were in fact interested, is not liable in damages therefor to the debtor, or to the person standing in the condition of the debtor, if not guilty of negligence in making such erroneous return.

The remedy for an error thus committed by an officer, lies in a motion to the court for leave for the officer to amend his return, and in the power of the court, under such motion, to extend the necessary relief upon just and equitable principles.

In making a levy upon land, a sheriff returned that the appraisers were disinterested.    The appraisers themselves were not aware that they were interested; the facts constituting their interest, if any, were not at the moment remembered by them; they declared to the officer that they had no interest; it was not suggested or suspected by any one present during the proceedings that they were interested; two of them were chosen respectively by the parties to the execution; the officer was required to act without much delay; and he testified, without any evidence to oppose his general statement, that he used great care and caution in making inquiry and investigation.    An action for false return was brought by mortgagees of the execution-debtor, who got their mortgage after the attachment and before the levy;

*Held,* That the sheriff was exonerated from the charge of negligence, and that the action could not be maintained whether the appraisers were in fact interested or not.

On report.

This was an action of the case against the defendant as sheriff for the alleged misdoings of his deputy, in making a false return of a levy.    The writ was dated May 28, 1880, and the plea was not guilty.

The facts are stated in the opinion.

*S. C. Strout, H. W. Gage* and *F. S. Strout,* for the plaintiffs.

*James D. Fessenden,* for the defendant.

PETERS, J. The case is this : The town of Otisfield levied an execution upon land of Joseph S. Mayberry, situated in that town. The plaintiffs in the present action, had at the time of the levy a mortgage from Mayberry of the same land, the mortgage being subsequent in date to the attachment under which the levy was made. The levying officer returned that the appraisers were disinterested men. Neither of the appraisers lived in Otisfield, but it turns out that one or two of them owned real estate in the town, and another had at the time a suit against Mayberry, in which was an attachment against his real estate made after the mortgage. These facts were not known at the time by the officer or to the parties to the execution. These plaintiffs sue the officer for a false return by his deputy, alleging that, had the deputy returned that the appraisers were interested instead of disinterested, the levy would have been bad, making their mortgage good.

The question, whether or not the appraisers were legally interested in the result of the levy, is elaborately discussed by counsel, but we give no opinion upon that point. The questions which we determine are these : *First,* is the officer answerable to these plaintiffs, a third party, as an insurer that his return in this respect is true, even though he has been guilty of no negligence ? *Secondly,* if not liable as an insurer, was the officer guilty of negligence in view of all the facts disclosed ?

It seems to be taken for granted by the plaintiffs that, if any material facts are erroneously stated in this return, the officer is responsible therefor to all persons concerned, whether he, the officer, be guilty of negligence or not. We do not accept this view of the law, but are of the opinion that the officer is not liable in the present action, unless he has been guilty of some fault or negligence, and we think further, that the officer is exculpated by the facts from the charge of negligence.

A sheriff is obliged, no doubt, to execute all the duties of his office with due skill and care. The law imposes upon him a

.high degree of care and diligence generally. Still, his liability varies with the varying conditions under which he acts. In some matters, without doubt, he stands in the condition of an insurer; he warrants the practical perfection of his work. In other matters his liabilities are not so great. But, upon examination, it will be found that, in all the classes of cases where the extremest responsibility falls upon him, the rule is founded upon some special reason or policy which does not apply to the present case.

For instance : A sheriff is answerable for the escape of a prisoner in execution, and can avail himself of nothing but the act of God, or the public enemies, as an excuse. Here his liability is akin to that of innkeepers and common carriers at common law. But this severe and exceptional requirement of the law is founded upon a public policy. The sheriff has the whole power of the county at his call, and that is supposed to be an answer to all excuses. This rule, however, was considered a hard one as early even as Lord MANSFIELD's time, who said, as reported in *O'Neil* v. *Marson*, 5 Burr. 2812, " the cases are hard, but they are too strong to be got over. There is no going into the reason of them."

But the legislative and judicial tendencies in this state have been towards a relaxation of such rigorous rules. An officer is now answerable for an escape, " only in an action of case for the actual damages sustained," and not, as formerly, for the entire sum due from the debtor in an action of debt. R. S., c. 81, § 80. The same change was long ago adopted in England. The common law liabilities of innholders, too, have been greatly modified in this state. Acts of 1874, c. 174. Innholders are no longer such insurers as formerly. And common carriers are now-a-days allowed to limit their responsibilities to some extent. The judicial tendency towards a mitigation of some of the ancient rules respecting the liabilities of public agents, is seen in the able judgment pronounced for the court by Justice VIRGIN, in the case of *Cumberland County* v. *Pennell*, 69 Maine, 357, where it is held to be a valid defense against a suit upon a county

treasurer's bond, that he was robbed of the county's money without fault or negligence on his part. The doctrine of that case applies to the case before us.

There are other cases where a sheriff assumes the burdens of an insurer in some respects. He must not commit *legal* mistakes. There is good reason for this. He assumes to know the law, or to take the risk of it, by accepting the office. He engages that he has the skill and ability to do its duties. But a marked distinction may exist between a mistake of law and a mistake of fact. Again; an officer must at his peril see to it, that he does not arrest the wrong person or attach the wrong property. But even here an unusual risk may be avoided. In cases of doubt, an indemnity may be required from the creditor.

The sheriff must safely keep property seized upon execution. Anciently, he was regarded as an insurer of property taken upon final process. Some modern courts hold to this liability, unless the sheriff is excused by the act of God or some other overpowering and extraordinary force. Other courts do not go so far, and only require upon the part of an officer reasonable care. Here, too, a public policy, something like that relating to escape, applies. The officer has the power of the county to preserve or retake property. Story, Bailm. § 130; Edward's Bailm. 59; 2 Thompson's Neg. 826, cases in note; Sher. and Red. Neg. § 530. Ordinary care, however, it is generally held, will discharge an officer from responsibility in case of the loss of goods attached upon mesne process. *Mills* v. *Gilbreth*, 47 Maine, 320; *Dorman* v. *Kane*, 5 Allen, 38, and authorities before cited. Schouler, Bailm. 55. An officer cannot charge in his bill of fees for costs of insurance by him actually paid upon attached property. *Burke* v. *The Brig, M. P. Rich*, 1 Cliff. 509.

But whatever the liability of an attaching officer may be to the creditor for the loss of property attached on writ or seized upon execution, his liability to the debtor or owner, is only that of ordinary care,—such care and diligence as a prudent business man would bestow upon his own property. *Parrott* v. *Dearborn*, 104 Mass. 104; Whar. Neg. § 289; Cooley, Torts, 394; Sher. and Red. Neg. § 530, and cases in note. The plaintiffs in the case at bar stand in the condition of owner and not creditor.

We have alluded to most, if not all, of the classes of cases in which a sheriff's responsibilities are the severest imposed by law. Evidently enough, the present case does not fall within the principles or policies illustrated' by them. It falls rather within the doctrine of many and various decisions of the courts, where it has been held that an officer shall be responsible merely for ordinary diligence, skill and care, — such care as seems reasonable to be required by the circumstances and exigencies of the given case, — but where the officer is in no sense an insurer. And these are generally cases where, as in the case at bar, the officer can demand no indemnity against error or mistake, is actuated by no wrong motive, and is called upon, by the nature of the service to be performed, *to find some person or thing, or ascertain some fact, or determine some question, upon inquiry and investigation to be made after the process is committed to him.*

Take a few cases in illustration of this view.

An officer is not bound to find a defendant, to arrest him, unless he can be found by a *reasonable diligence.* The officer does not warrant that he will find him. After a diligent search he may return *non est inventus,* although the defendant may really be within the officer's precinct. *Hinman* v. *Borden,* 10 Wend. 369; Sher. and Red. Neg. § 526; 1 Backus' Sher. 294. Nor is an officer bound at all events to find attachable property, if the defendant has such. *Nulla bona* may be returned, if goods are not found by the exercise of ordinary skill and diligence by the officer. Sher. and Red. Neg. § 521, and cases cited. *Tucker* v. *Bradley,* 15 Conn. 46.

A sheriff, who takes bail in a suit, does not warrant the sufficiency of the bail. He does warrant that the bail appeared to be good, and were so regarded by those most likely to be correctly informed. The same rule applies in taking sureties upon a replevin bond. Such is the law of England, and of the states in this country except where a statutory policy requires a warranty. 1 Backus' Sher. 234 and pages following; Sher. and Red. Neg. § § 540, 541, and cases cited; *Hindle* v. *Blades,* 5 Taunt. 225.

Generally·an officer is not liable for attaching too much or too little property, if he exercises a sound discretion and acts in good faith. Sher. and Red. Neg. § 523, and cases. An officer's return in some cases, is not conclusive against him, where he states a thing which must necessarily be a matter of opinion or judgment merely. Drake, Attach. § 206. This applies to a statement of time. *Williams* v. *Cheesebrough*, 4 Conn. 356. Or to a statement of value. *Pierce* v. *Strickland*, 2 Story, 292. An officer should not be concluded by an expression of his judgment as to the value of property, "as it may prove to be of less value on account of some concealed infirmity or defect." *Denton* v. *Livingston*, 9 Johns. 97. Other illustrations are found in other cases. *Watson* v. *Brennan*, 39 Super. Ct. (N. Y.) 81. S. C. 66 N. Y. 621. *Lovick* v. *Crowder*, 8 B. and C. 132.

*Richards* v. *Gilmore*, 11 N. H. 493, is an important case touching the point at issue. There the creditor sued the officer for making an irregular levy by which his debt was lost. It was alleged that the officer was remiss in not ascertaining the full facts. It is there by the court said : "The requirement (to levy upon the estate,) upon the officer was not designed to be arbitrary in its character, or to impose an unreasonable or improper burden of responsibility. He is bound to the exercise of due care and diligence in obeying the command of the execution. The question of proper care and diligence necessary to exonerate the officer from such liability, can be determined only on a full consideration of the facts. If he was aware of the true state of the title at the time of the levy, or if he did not exercise due care and diligence in ascertaining how the estate was situated, he has failed in the proper discharge of his duty. He may have exercised all the care and diligence that could be required of him in making the proper inquiry as to the title, and may have been misled without such fault as should impute blame to him or render him liable for neglect."

We think, then, that the true question, in the case at bar, is, not whether the officer made an erroneous return, but whether he *negligently* made such a return. It would be a perilous business for officers, if the rule be otherwise. It is easy to conceive of

cases where the interest of an appraiser may not only be undisclosed by any record, but be beyond the reach of human ingenuity to find out.  So, too, the appraiser must be a "discreet" person, or such used to be the law in this state.  Should the officer in such case warrant to all persons that the appraiser was a man of discretion, and that he would exercise a good discretion in performing the duty undertaken by him?  Or is the implied warranty of the officer that he has exercised, as an officer, a good judgment and sound discretion in the premises?  In the case at bar, the officer's return does not warrant that the appraisers were disinterested, but it warrants that the officer by the use of due care and diligence could not *discover* that they were interested. We find no judicial decision affirming the contrary of this.

The *second* question is, was the officer guilty of negligence, *as to these plaintiffs?*  Revert to the circumstances as they appeared upon the day assigned for the appraisal.  The appraisers met at the place fixed for the purpose.  There was nothing to suggest. that they were interested, or to arouse a suspicion of it.  The appraisers were not themselves aware that they had an interest. At any rate, if they were interested, the fact was not then present to their minds.  They lived out of town.  Two of them were chosen by the respective parties, who had a motive to watch the acts of each other.  The mortgagees gave no notice to be heard or considered, and the officer knew nothing of their claim.  There is always some presumption that an officer does his duty.  He testifies that he "took every precaution in his power" to satisfy himself of the fitness of the appraisers, and there is nothing to contradict his statement.  He also testifies that he inquired of the appraisers severally if they knew of any reason why they could not act as disinterested men, and they replied in the negative.  The officer had no power to institute a judicial inquiry on the spot.  He had no right to reject an appraiser chosen by a party, if not interested.  The oath taken by an appraiser, by implication at least, asseverates that he is not interested.  And the appraisers now swear that they were not conscious of any bias or interest; thought of none.

Do the plaintiffs say that the officer was *bound* to know that the appraisers were interested? Had he known that fact, he would have rejected their action *in toto*, in which case the plaintiffs would have reaped no advantages from the officer's error. And it is quite a question whether the plaintiffs should have more than nominal damages, if they could recover in this action. But we pass that question as an unnecessary element in this discussion, except as circumstantially affecting the equities and justice of the case. *Vide* these authorities. *Green* v. *Ferguson*, 14 Johns. 389; *Rich* v. *Bell*, 16 Mass. 294.

It cannot be pretended that the officer should have consulted the registry of deeds, to ascertain the property status of the appraisers. We venture to say that never in the world did an officer do such a thing. The records would not always reveal the fact of interest. But in this instance the records were thirty miles or more away. The moment assigned for action had arrived. The officer cannot know in advance who the appraisers may be. An officer is not a fit person to examine such records. An expert to do it for him must take time and receive compensation. The idea is impracticable.

What remedy, then, have the plaintiffs, for any injury alleged to have been by them sustained? The answer is obvious and not difficult. It lies perhaps in a bill of equity. Or, better than that, it lies in the motion for amendment and in the power of the court to extend the necessary relief, upon just and equitable principles. Even upon a motion of the appraisers, an amendment, to cure an error, could be made. *Chase* v. *Williams*, 71 Maine, 190.

Both officer and appraiser moved for leave to amend, in the interest of the plaintiffs, in a former litigation involving the facts now presented to us, and the motions were upon due consideration denied. It was held not to be in furtherance of justice to allow the amendment. The implication of that decision is that the sheriff had done no unlawful act. If he had, the court would have allowed him to confess it. In that litigation, the plaintiffs had a day in court, and have really suffered no injustice. Most certainly, the court would not have refused the officer the privilege

of amendment, had it been supposed that a refusal would entail upon him a liability to the present plaintiffs.

                              *Judgment for defendant.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.